UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ONEIDA INDIAN NATION OF NEW YORK,

                                            Plaintiff,

              vs

MADISON COUNTY,

                                            Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**U. S. DISTRICT COURT
N. D. OF N. Y.
FILED**

**OCT 2 7 2005**

AT _____ O'CLOCK _____ M
LAWRENCE K. BAERMAN, Clerk
UTICA

5:00-CV-506

APPEARANCES:

MACKENZIE HUGHES LLP
Attorneys for Plaintiff
101 South Salina Street
P.O. Box 4967
Syracuse, NY 13221-4967

ZUCKERMAN SPAEDER LLP
Attorneys for Plaintiff
1201 Connecticut Ave, NW
Washington, DC 20036

NIXON PEABODY LLP
Attorneys for Defendant
Clinton Square
P.O. Box 31051
Rochester, NY 14603-1051

HON. ELIOT SPITZER
Attorney General for the State of New York
Attorney for Amicus State of New York
The Capitol
Albany, NY 12224-0341

DAVID N. HURD
United States District Judge

OF COUNSEL:

PETER D. CARMEN, ESQ.

MICHAEL R. SMITH, ESQ.
WILLIAM W. TAYLOR, III, ESQ.

DAVID M. SCHRAVER, ESQ.
G. ROBERT WITMER, JR.
JOHN J. FIELD, ESQ.

HOWARD L. ZWICKEL, ESQ.
DAVID B. ROBERTS, ESQ.
Ass't Attorneys General

**MEMORANDUM-DECISION and ORDER**
and
**PERMANENT INJUNCTION**

*A Nation may be said to consist of its territory, its
people, and its laws.  The territory is the only part
which is of certain durability.*

*President Abraham Lincoln
Annual Message to Congress
December 1, 1862*

A district court should not permit the taking of a sovereign nation's land against its

will by foreclosure or any other means, without the express approval of the United States

Government.  In this country such an extraordinary remedy--taking a sovereign nation's land

against its will--has never been legally sanctioned.

## I. INTRODUCTION

On June 7, 2005, plaintiff Oneida Indian Nation of New York ("the Nation") filed a

motion for summary judgment.  Defendant Madison County ("the County") opposed and

cross-moved for summary judgment pursuant to Fed. R. Civ. P. 56.  The County also filed a

motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), which the Nation opposed.  New York

State, as amicus curiae, filed a brief in support of the County.  Oral argument was heard on

September 7, 2005, in Utica, New York.  Decision was reserved.

## II. BACKGROUND

The Nation filed this action seeking to prevent the County from assessing and

enforcing property taxes against Nation-owned property.  On June 4, 2001, a Memorandum-

Decision and Order issued in this and related cases holding, inter alia, that the lands at issue

"are Oneida Reservation lands and therefore are Indian Country . . . .  As Indian Country, the

- 2 -

properties are not subject to taxation" by the County.  Oneida Indian Nation of N.Y. v. City of Sherrill, N.Y., 145 F. Supp. 2d 226, 266 (N.D.N.Y. 2001).[1]  In addition, the County was enjoined and restrained "from taking any act to impose property taxes upon, or to collect property taxes with respect to" thirteen parcels that were the subject of a 1999 foreclosure action.  Id. at 267-68.  A judgment was entered accordingly.  Pursuant to a mandate issued by the United States Court of Appeals for the Second Circuit, the judgment was vacated.  Oneida Indian Nation of N.Y. v. City of Sherrill, N.Y., 337 F.3d 139, 171 (2d Cir. 2003).  The Second Circuit found that the record before it was incomplete as to whether the Madison County parcels "were part of the Oneidas' historical reservation."  Id.  Accordingly, the matter was remanded for further proceedings.  Id.

    The United States Supreme Court granted certiorari in the companion cases.  124 S. Ct. 2904 (2004).  The Court rejected "the unification [of fee and aboriginal title] theory" and held "that 'standards of federal Indian law and federal equity practice' preclude the Tribe from rekindling embers of sovereignty that long ago grew cold."  125 S. Ct. 1478, 1489-90 (2005) ("Sherrill").  Stated another way, the Court held "that the Oneida Indian Nation is not now immune from the taxing authority of local government."  Id. at 1494 (Souter, J., concurring).  Rehearing was denied.[2]  125 S. Ct. 2290 (2005).

## III. FACTS

    An extensive background of facts is set forth in the prior decisions, familiarity with which is assumed.  See 337 F.3d at 144-53; 145 F. Supp. 2d at 232-36.  Only the facts

---

[1]  The subsequent history for this case is set forth in the following text.

[2]  The City of Sherrill and the Nation reached a settlement and filed a Compact and Stipulation of Dismissal on October 18, 2005.

necessary for resolution of the motions are set forth below.  The following facts are undisputed unless otherwise noted.

Since the late 1990s the Nation has been reacquiring properties in the County and elsewhere.  The Nation currently owns 113 parcels in the County.  There is now no dispute that all are within the boundaries of the reservation as described in the Treaty of Ft. Schuyler and the Treaty of Canandaigua.

The County assessed taxes against Nation-owned parcels, and included the parcels in its yearly foreclosure actions in state court.  It was the County's practice to then withdraw the parcels owned by the Nation, in anticipation of a resolution of the taxability question in Sherrill.

The County assessed 2003 taxes against ninety-eight parcels.  These parcels were included in the County's 2003 foreclosure action.  However, the County did not withdraw Nation-owned properties from the foreclosure action, as had been its practice.  The County instituted a foreclosure action in state court on November 14, 2003.  The Petition and Notice of Foreclosure was published in December 2004 and January 2005, and was mailed to the subject parcel owners, including the Nation, on December 8, 2004.  The specified last day for redemption of these ninety-eight Nation-owned parcels was March 31, 2005.

The Supreme Court decided Sherrill on March 29, 2005, resolving the issue of taxability of reacquired Nation property.  On April 28, 2005, the County filed a motion for summary judgment in the 2003 state court foreclosure action.  If successful on the motion, possession and title to the properties would be awarded to the County.  Accordingly, a preliminary injunction issued enjoining the County from proceeding with the foreclosure

- 4 -

action.  Oneida Indian Nation of N.Y. v. Madison County, 376 F. Supp. 2d 280, 283 (N.D.N.Y. 2005).

## IV.  DISCUSSION

### A.  Standards

#### 1.  Motion to Dismiss

A cause of action shall not be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957).  In considering a motion brought pursuant to Fed. R. Civ. P. 12(b), the court must assume all of the allegations in the complaint are true.  Id.  In reviewing the sufficiency of a complaint at the pleading stage, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686 (1974).

Where a motion to dismiss is made prior to any discovery or the filing of an answer, the court is loath to dismiss the complaint, regardless of whether the plaintiff is unlikely to prevail, unless the defendant can demonstrate that plaintiff is unable to prove facts which would entitle him to relief.  Wade v. Johnson Controls, Inc., 693 F.2d 19, 22 (2d Cir. 1982); see also Egelston v. State Univ. College at Geneseo, 535 F.2d 752, 754 (2d Cir. 1976).

#### 2.  Summary Judgment

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505,

2509-10 (1986). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552 (1986). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).

When the moving party has met the burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., 475 U.S. at 586, 106 S. Ct. at 1356. At that point, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56; Liberty Lobby, Inc., 477 U.S. at 250, 106 S. Ct. at 2511; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. Liberty Lobby, Inc., 477 U.S. at 248-49, 106 S. Ct. at 2510; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356.

### B. Analysis

#### 1. County's Motion to Dismiss

The County asserts the doctrine of abstention and lack of subject matter jurisdiction (due to the "prior-exclusive-jurisdiction" rule applicable to in rem proceedings) as bases for dismissal. It is therefore appropriate to first address the County's motion to dismiss.

#### a. Abstention

The doctrine of abstention may be applied by a federal court to "decline to exercise or postpone the exercise of its jurisdiction" when the same issue is also presented in a state court with concurrent jurisdiction. Colorado River Water Conservation Dist. v. United States,

424 U.S. 800, 813, 96 S. Ct. 1236, 1244 (1976).  However, "'it is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.'"  Id. (quoting County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188-89, 79 S. Ct. 1060, 1063 (1959)).  Abstention is appropriate "'only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest.'"  Id. (quoting County of Allegheny, 360 U.S. at 188-89, 79 S. Ct. at 1063).  Additionally, a federal court should never abstain from a suit "'merely because a State court could entertain it.'"  Id. at 813-14, 96 S. Ct. at 1244 (quoting Alabama Pub. Serv. Comm'n v. Southern R. Co., 341 U.S. 341, 361, 71 S. Ct. 762, 774 (1951) (Frankfurter, J., concurring in result)).  Abstention may be applied in only three categories of cases.  Id. at 814, 96 S. Ct. at 1244.

        The first category of cases to which the abstention doctrine may be applied is those "'cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law.'"  Id. (quoting County of Allegheny, 360 U.S. at 189, 79 S. Ct. at 1063).  The only federal constitutional question presented here is whether the notice provided to the Nation of the impending foreclosure constituted due process.  This issue would not be mooted by a decision in the state action.  A state court determination of pertinent state law would not result in presentation of this issue in a different posture.  See id.  Accordingly, this case does not fit within the first category of cases to which abstention might be appropriate.  See id.

        The next category of cases are those "where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar."  Id.  At issue here are the federal

questions of application of a federal statute (the Nonintercourse Act), Tribal sovereign immunity, and due process.  There is no "difficult question[] of state law" presented.  See id. Thus, this case also does not fit within the second category.

The third and final category of cases in which abstention might be appropriate is those cases "where, absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings, state nuisance proceedings . . . directed at obtaining the closure of places exhibiting obscene films, or collection of state taxes." Id. at 816, 96 S. Ct. at 1245-46.  This clearly is not a case involving restraint of a state criminal proceeding, nor does it involve a nuisance closing of a place due to obscenity. See id.  Further, the issue of taxation of the property by the state was resolved in Sherrill. See 125 S. Ct. at 1494 (Souter, J., concurring) (reiterating the majority's holding that the Nation "is not now immune from the taxing authority of local government").  Accordingly, this case does not fit within the third and final category of cases to which the doctrine of abstention applies. See Colorado River, 424 U.S. at 816-17, 96 S. Ct. at 1246.

### b.  Jurisdiction

Although the doctrine of abstention is not applicable in the present case, other principles grounded in judicial efficiency "govern in situations involving the contemporaneous exercise of concurrent jurisdictions." Id. at 817, 96 S. Ct. at 1246.  "Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'" Id. (quoting McClellan v. Carland, 217 U.S. 268, 282, 30 S. Ct. 501, 505 (1910)).  Federal district courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." Id.

- 8 -

Thus, circumstances in which a federal court action should be dismissed for reasons of judicial efficiency in the face of a concurrent state court proceeding are "considerably more limited than the circumstances appropriate for abstention." Id. at 818, 96 S. Ct. at 1246.

In considering whether dismissal for reasons of judicial efficiency is appropriate when there is concurrent jurisdiction in a state court, factors such as "the inconvenience of the federal forum, the desirability of avoiding piecemeal litigation, and the order in which jurisdiction was obtained by the concurrent forums" may be assessed. Id., 96 S. Ct. at 1247 (internal citations omitted). A court must carefully consider "both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise" when determining whether to dismiss the case. Id. No single factor is determinative, and "[o]nly the clearest of justifications will warrant dismissal." Id. at 818-19, 96 S. Ct. at 1247.

Here there is no inconvenience in continuing to proceed with this federal court action. The action has been pending since March 30, 2000. Proceedings have occurred over the five-plus years of its pendency. While state court proceedings were also initiated some years ago, they were held in abeyance at the choice of the parties pending resolution in this and the related Sherrill cases. Thus, avoiding piecemeal litigation will be furthered by maintaining the proceedings here. Moreover, although a state court proceeding was initiated in 1999 (as well as those initiated in later years), the order in which jurisdiction was obtained does not favor dismissal of the federal court action since the first-filed state court action was held in abeyance pending resolution of this matter. In short, there are no factors "counseling against th[e] exercise" of federal jurisdiction in this action. See id. at 818-19, 96 S. Ct. at 1247. There is no clear justification warranting dismissal. See id. at 819, 96 S. Ct. at 1247.

- 9 -

The only other circumstance in which it would be appropriate to dismiss the federal court action based upon considerations of judicial administration would be where the court in the concurrent actions must exercise jurisdiction over the same property.  Id. at 818, 96 S. Ct. at 1246 (citing  Donovan v. City of Dallas, 377 U.S. 408, 412, 84 S. Ct. 1579, 1582 (1964)).  In that instance, the "state or federal court having custody of such property has exclusive jurisdiction to proceed." Donovan, 377 U.S. at 412, 84 S. Ct. at 1582 (citing Princess Lida v. Thompson, 305 U.S. 456, 465-68, 59 S. Ct. 275, 281 (1939)).

Thus, once a state court has taken jurisdiction of the res that is the subject of a state court in rem proceeding, a federal court cannot also exercise jurisdiction of the res. Donovan, 377 U.S. at 412, 84 S. Ct. at 1582; Kline v. Burke Constr. Co., 260 U.S. 226, 229, 43 S. Ct. 79, 81 (1922).  The converse is also true.  Kline, 260 U.S. at 229, 43 S. Ct. at 81. However, this "first-filed" rule is applicable only to in rem proceedings and is not applicable to in personam actions.  Donovan, 377 U.S. at 412, 84 S. Ct. at 1582; Kline, 260 U.S. at 230, 235, 43 S. Ct. at 81, 83.  This is so because although a state and federal court may have concurrent jurisdiction, "both courts cannot possess or control the same thing at the same time." Kline, 260 U.S. at 235, 43 S. Ct. at 83.  Based upon this principle, the rule of comity developed prudentially limiting exercise of "in rem jurisdiction over a res that is already under the in rem jurisdiction of another court." United States v. One 1985 Cadillac Seville, 866 F.2d 1142, 1145 (9th Cir. 1989) (citing Penn Gen. Casualty Co. v. Pennsylvania, 294 U.S. 189, 195, 55 S. Ct. 386, 389 (1935)).  In other words, prior assumption of jurisdiction over a res by a state court creates an exceptional circumstance in which it may be proper for a federal court to decline to exercise its jurisdiction, as set forth in Colorado River.  See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 19, 103 S. Ct. 927, 938-39 (1983)

- 10 -

(applying Colorado River to the facts of the case to find that no exceptional circumstances justified staying the federal action).

Here, the state court proceeding is an in rem foreclosure action.  However, this federal court proceeding is in personam.  This in personam action in federal court is not foreclosed by the state court in rem proceeding.  See York Hunter Constr. v. Avalon Props., Inc., 104 F. Supp. 2d 211, 215 (S.D.N.Y. 2000) (restating Second Circuit law "that federal district courts may adjudicate matters that indirectly relate to the state's exercise of in rem jurisdiction" and the state court must follow the federal court's adjudication regarding the rights at issue); United States v. $3,000,000 Obligation of Qatar Nat'l Bank, 810 F. Supp. 116, 118 (S.D.N.Y. 1993) (citing and quoting Fischer v. American United Life Ins. Co., 314 U.S. 549, 554, 62 S. Ct. 380, 383 (1942) for the proposition that "a state or federal court 'may properly adjudicate rights in property in possession' of another court").

Based upon the foregoing, this action need not be dismissed based upon the doctrine of abstention or because there is a state court in rem proceeding.

## 2. Motion and Cross-motion for Summary Judgment

The Nation propounds three bases upon which it is entitled to summary judgment for injunctive and declaratory relief.  The County relies upon Sherrill in opposition to the Nation's motion and on behalf of its cross-motion for summary judgment.  The following analysis demonstrates that there are four independent bases supporting summary judgment in favor of the Nation:  the Nonintercourse Act, Tribal sovereign immunity, due process, and state law.

- 11 -

### a. Nonintercourse Act, 25 U.S.C. § 177

Section 177 of Title 25 of the United States Code prohibits the "purchase, grant, lease, or other conveyance" of land from "any Indian nation or tribe of Indians" unless it is pursuant to a "treaty or convention entered into pursuant to the Constitution." 25 U.S.C. § 177. In other words, land owned by an Indian nation is inalienable (except with the approval of Congress, a circumstance not present here). See id. Proceeding with the state court foreclosure would result in the transfer of title to land owned by the Nation to the County-- alienation of Indian land. This is precisely what is prohibited by the Nonintercourse Act.

The County addresses the Nonintercourse Act only in a footnote in its memorandum. It contends that the Nation advanced the Nonintercourse Act argument before the Supreme Court in Sherrill but was unsuccessful. The County suggests that by its holding that the Nation is precluded by equitable principles from the remedy of tax immunity, the Supreme Court rejected the Nonintercourse Act argument. However, nothing in Sherrill explicitly or implicitly rejects the validity of the Nonintercourse Act or its applicability with regard to the land in question. The Court acknowledged that the Nonintercourse Act restricts the alienation of Indian land without Congressional approval. See 125 S. Ct. at 1484 & n.2 (stating that "the Act bars sales of tribal land without the acquiescence of the Federal Government"). The Court also discussed the history of claims relating to illegal dispossession of land from the Indians in this region, all based upon a violation of the Nonintercourse Act. See id. at 1486-89. In each action discussed the Indians were successful in their claim for some sort of recompense for the wrongful dispossession, with a single exception. Id. That exception pertained to lands ceded to New York State under treaties in 1785 and 1788, under the Articles of Confederation, id. at 1488 n.4, prior to

- 12 -

passage of the first Nonintercourse Act in 1790.  The lack of success on that claim was not attributable to inapplicability of the Nonintercourse Act.

The Supreme Court in Sherrill simply foreclosed the Nation from obtaining the remedy of immunity from taxes.  Id. at 1494.  It noted, in response to the dissent's suggestion that tax immunity could be asserted defensively, that the "equitable cast of the relief sought remains the same whether asserted affirmatively or defensively."  Id. at 1489 n.7.  This does not address the issue of alienability.  It merely suggests that the Nation is foreclosed from asserting immunity from taxes as a defense.  See id.

The Nonintercourse Act, in plain language, prohibits the conveyance of lands from any Indian nation.  The foreclosure sought by the County would be a conveyance of lands from the Nation.  Accordingly, the foreclosure is prohibited by the Nonintercourse Act.

Similarly, the finding that the land is taxable does not mean that it is subject to foreclosure.  Implicit permission to foreclose as read into the Sherrill decision by the County is simply insufficient to authorize such a drastic remedy.

Just as the Nation is precluded from its chosen remedy--tax immunity, so is the County precluded from its chosen remedy--foreclosure.  The former preclusion is derived from "standards of federal Indian law and federal equity practice" that "evoke the doctrines of laches, acquiescence, and impossibility."  Id. at 1489-90, 1494.  The latter preclusion is derived from a federal statute, the meaning of which is clear and unambiguous.  See 25 U.S.C. § 177.  While it has been and will be said that it is unfair and will work a hardship on the citizens of the County to preclude the remedy of foreclosure, so too some will say that it is unfair to the members of the Nation whose tens of thousands of acres of land were illegally taken from them to preclude their tax immunity remedy.

- 13 -

**b.  Tribal Sovereign Immunity**

"Indian tribes are 'domestic dependent nations' that exercise inherent sovereign authority over their members and territories."  Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Oklahoma, 498 U.S. 505, 509, 111 S. Ct. 905, 909 (1991) (quoting Cherokee Nation v. Georgia, [30 U.S. 1], 5 Pet. 1, 17 (1831)).  Accordingly, sovereign immunity bars suits against Indian tribes unless the tribe has clearly waived its immunity or the immunity has been abrogated by Congress.  Id. (citing Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58, 98 S. Ct. 1670, 1677 (1978)).  Further, "a tribe does not waive its sovereign immunity from actions that could not otherwise be brought against it merely because those actions were pleaded in a counterclaim to an action filed by the tribe."  Id. (citing United States v. United States Fidelity & Guaranty Co., 309 U.S. 506, 513, 60 S. Ct. 653, 656 (1940)).

The Nation is a federally recognized Indian tribe.  The Nation has not waived its sovereign immunity with regard to its real property.  Nor has Congress abrogated the Nation's immunity regarding the property it owns.  More generally, "Congress has never authorized suits [against Indian tribes] to enforce tax assessments,"  although it "has occasionally authorized limited classes of suits."  Id. at 510, 111 S. Ct. at 910.  Thus, sovereign immunity bars suits against the Nation.  See id. at 509, 111 S. Ct. at 909.

The County argues that Potawatomi is inapposite because that was an in personam suit against the tribe, while the tax foreclosure suit here is in rem.  It is of no moment that the state foreclosure suit at issue here is in rem.  What is relevant is that the County is attempting to bring suit against the Nation.  The County cannot circumvent Tribal sovereign immunity by characterizing the suit as in rem, when it is, in actuality, a suit to take

- 14 -

the tribe's property.  See Kiowa Tribe of Oklahoma v. Manufacturing Techs., Inc., 523 U.S. 751, 755, 118 S. Ct. 1700, 1703 (1998) (explaining its holding in Potawatomi that Indian tribes are immune from suit to collect unpaid taxes, stating:  "a difference [exists] between the right to demand compliance with state laws and the means available to enforce them"); see also United States v. Nordic Village, Inc., 503 U.S. 30, 38, 112 S. Ct. 1011, 1017 (1992) (rejecting the suggestion that there is any "in rem exception to the sovereign-immunity bar" in the context of a state's Eleventh Amendment sovereign immunity); French v. Georgia Dep't of Revenue (In re ABEPP Acquisition Corp.), 215 B.R. 513, 516-17 (B.A.P. 6th Cir. 1997) (applying Nordic Village to reject the suggestion that the "bankruptcy court could burrow past" Eleventh Amendment immunity "by exercising in rem jurisdiction").

The County also contends that Potawatomi is inapposite because the sales of cigarettes at issue there occurred on land held in trust for the Potawatomis, whereas here, the properties are not reservation land.  The County's assertion that the properties are not reservation land is based upon its interpretation of Sherrill.  Even if the County's assertion were correct, it misapprehends Potawatomi.  There Oklahoma argued that because the cigarette sales occurred on trust land rather than reservation land the normal rules of sovereign immunity should not apply.  Potawatomi, 498 U.S. at 511, 111 S. Ct. at 910.  The Court in Potawatomi refused to distinguish between trust land and reservation land.  Id.  The Court further noted that a case involving a ski resort operated by an Indian Tribe outside of a reservation was not to the contrary.  Id. (citing Mescalero Apache Tribe v. Jones, 411 U.S. 145, 93 S. Ct. 1267 (1978)).  In Mescalero the Court found that, in the absence of contrary federal law, the operation of the ski resort outside of the reservation was "held subject to nondiscriminatory state law otherwise applicable to all citizens of the State."  Id. (citing

- 15 -

Mescalero, 411 U.S. at 148-49, 93 S. Ct. at 1270).  Additionally, in Kiowa Tribe, the Court

distinguished application of state substantive laws regarding off-reservation conduct with

tribal immunity from suit.  523 U.S. at 755, 118 S. Ct. at 1703.  The Court held that the Kiowa

Tribe was immune from a suit for breach of contract regardless of "whether those contracts

involve[d] governmental or commercial activities and whether they were made on or off a

reservation."  Id. at 760, 118 S. Ct. at 1705.

It is also notable that the Potawatomi Court rejected, on sovereign immunity

grounds, Oklahoma's countersuit to enforce its $2.7 million claim for taxes assessed on the

sale of cigarettes which the Tribe failed to pay.  See Potawatomi, 498 U.S. at 507-09, 111 S.

Ct. at 908-09.  The Court also rejected Oklahoma's complaints that although it had a right (to

assess a tax on sales of cigarettes to non-Indians) it had no remedy if the Tribe had

sovereign immunity.  Id. at 514, 111 S. Ct. at 912.  The Court noted that although sovereign

immunity might bar Oklahoma from the most efficient remedy, other remedies, such as an

"agreement[] with the tribes to adopt a mutually satisfactory regime for the collection of" the

tax, were available.  Id.

As a subset of its claim that tribal sovereign immunity precludes the state tax

foreclosure suit, the Nation contends that it is not subject to the imposition of penalties and

interest, which amount to a state law fine against it.  The County makes no argument in this

regard.  Therefore, it must be concluded that the County agrees that the imposition of

penalties and interest was improper.

### c.  Due Process

It is a requirement of due process that a property owner be properly notified of a tax

sale and redemption period.  City of Sherrill, 145 F. Supp. 2d at 257 (citing McCann v.

Scaduto, 71 N.Y.2d 164, 276 (N.Y. Ct. App. 1987); Yagan v. Bernardi, 256 A.D.2d 1225, 1226 (N.Y. App. Div. 4th Dep't 1998)).  The time periods set forth in the regulatory scheme must be followed; shorter notice violates due process.  Id.  New York has a two-year general redemption period.  N.Y. Real Prop. Tax Law § 1110 (McKinney 2000).  The parties have not pointed out any different redemption period set by the County.  Thus, in order to comport with due process the County must have given the Nation notice two years prior to expiration of the redemption period.  See City of Sherrill, 145 F. Supp. 2d at 257.

 The County first notified the Nation of the March 31, 2005, expiration of the redemption period on December 8, 2004.  This is far less than the two years required to comport with due process.  Additionally, at the time the notice was sent out the case law of this circuit held that these properties, reacquired by the Nation and within its reservation, were exempt from taxation.  It was not until the Supreme Court decision of March 29, 2005, that the law changed making the properties taxable.  Subsequently, the County extended the redemption period to June 3, 2005.  Even considering the concededly earliest notification on December 8, 2004, and the latest expiration of the redemption period of June 3, 2005, the County falls short of the two-year period required for notice by approximately eighteen months.  Thus, the County failed to give timely notice of the redemption period expiration to the Nation, a due process violation.

 The County relies upon Akey v. Clinton County, N.Y., 375 F.3d 231 (2d Cir. 2004), in support of its position that notice to the Nation comported with due process.  This reliance is untenable.  The issue before the Akey Court was whether the means selected to make the notifications comported with due process.  Id. at 235.  The court stated that notice by mail, reasonably calculated to be received by the property owners, is sufficient to constitute due

process.  Id.  In <u>Akey</u>, the question raised was whether the County's notice was reasonably

calculated to reach the property owners given, for example, failure to do a complete search

of public records to find an updated address after a notice of foreclosure was returned as

undeliverable.  Id. at 236.  The timing of the notices was not in issue.

### d. State Law

New York State Law provides that "real property in any Indian reservation owned by

the Indian nation, tribe or band occupying them shall be exempt from taxation."  N.Y. Real

Prop. Law § 454; N.Y. Indian Law § 6 (McKinney 2001) (directing that no taxes be assessed

upon Indian reservation lands).  The Nation's "reservation was not disestablished."  <u>City of</u>

<u>Sherrill</u>, 337 F.3d at 167.  The properties at issue are located within the Nation's reservation.

Pursuant to state law, taxes should not have been assessed against the Nation's properties

and such properties are exempt from taxation.  Therefore, the County's assessment of taxes

upon the property and its attempts to foreclose for non-payment of such taxes is contrary to

state law.

The County argues that relying upon the Second Circuit's holding that the

reservation was not disestablished is contrary to the Supreme Court decision is <u>Sherrill</u>.  The

Supreme Court focused its decision on the requested remedy--tax immunity.  <u>See</u> <u>Sherrill</u>,

125 S. Ct. at 1490 n.9.  It explicitly declined to decide whether the Second Circuit erred in

determining that the reservation was not disestablished.  Id.  Thus, the Second Circuit

holding that the reservation was not disestablished remains undisturbed.  Further, the

Supreme Court's determination that federal equitable principles prevent the Nation from

obtaining its requested remedy of tax immunity necessarily was predicated upon an

assumption that the reservation was not disestablished.  This is so because if the reservation was disestablished the lands would not be Indian Country and clearly would be subject to taxation.  Under such circumstances the Supreme Court would not have needed to rely upon the equitable principles of laches, acquiescence, and impossibility to find the properties were subject to local taxation.

In sum, the Nation is entitled to summary judgment based upon each of the foregoing four separate and distinct reasons.  The County is not entitled to summary judgment on its cross-motion.

### 3. Injunctive and Declaratory Relief

A party seeking injunctive relief must establish the inadequacy of any remedy at law and irreparable harm.  Northern Cal. Power Agency v. Grace Geothermal Corp., 469 U.S. 1306, 1307, 105 S. Ct. 459, 460 (1984); Ticor Title Ins. Co. v. Cohen, 173 F.3d 63, 68 (2d Cir. 1999).  In determining whether to exercise its discretion and grant equitable relief, a court must "weigh[] the potential benefits and harm to be incurred by the parties from the granting or denying of such relief." Ticor Title, 173 F.3d at 68 (citing Yakus v. United States, 321 U.S. 414, 440, 64  S. Ct. 660, 675 (1944)).

Here, it is clear that any remedy at law would be inadequate and irreparable harm would result if an injunction is not issued precluding the County from foreclosing on the Nation's properties.  Monetary damages would be insufficient to remedy a foreclosure and change of title of the Nation's properties.  Indeed, the Nation requested only injunctive and declaratory relief, not monetary relief.  Additionally, the Nation would be irreparably harmed by the foreclosure and change of title of its properties.  Finally, granting an injunction would

- 19 -

mean that the County's remedy for the non-payment of taxes by the Nation would exclude foreclosure.  Limitation of enforcement remedies is insufficient to justify overriding Tribal sovereign immunity.  See, e.g. Kiowa Tribe, 523 U.S. at 755, 118 S. Ct. at 1703 (holding that although the state may tax sales to non-Indians, the Tribe was immune from a suit to collect such taxes).  Thus, a balance of the hardships weighs in favor of granting the injunction.

The Nation also seeks a declaration that its reservation was not disestablished. Given the Supreme Court determination that it need not review the Second Circuit's conclusion in this regard, 125 S. Ct. at 1490 n.9, the Second Circuit's holding that the reservation was not disestablished, 337 F.3d at 167, remains good law.  Accordingly, the Nation is entitled to a declaration that its reservation was not disestablished.

## V.  CONCLUSION

The remedy of foreclosure is not available to the County.  First, under the Nonintercourse Act, the Nation's properties are inalienable.  Second, the Nation is immune from suit to collect unpaid property taxes.  Third, the notice provided to the Nation of the date the redemption period expired failed to comport with due process because it was significantly shorter than two years.  Fourth, the Second Circuit finding that the Nation's reservation was not disestablished was not abrogated by Sherrill and New York State law exempts reservation land from taxation.  As a result, the Nation is entitled to the injunctive and declaratory relief it seeks.

The Nation owes real property taxes to the County.  However, the County may not, in effect, seize lands owned by the Nation in order to collect those taxes.  It must find an alternate method to satisfy the Nation's debt to the County.

- 20 -

There is a vast difference between requiring real property owned by a sovereign nation to be taxed and to comply with local zoning and land use regulations, and allowing ownership of real property to be seized from that sovereign nation.  The seizing of land owned by a sovereign nation strikes directly at the very heart of that nation's sovereignty.  In the face of Federal and State laws and the solemn treaty obligations of the United States, permitting the seizure of lands from a sovereign nation should require, at the very least, a specific Act of Congress.

This is obviously not the last word.  There will undoubtedly be an appeal to the Second Circuit, and perhaps to the Supreme Court.[3]  However, unless directed otherwise by legislation or judicial mandate, the seizure of land from a sovereign, against its will, will not occur as the result of a ruling from this forum.

Therefore, it is

ORDERED that

1.  Madison County's motion to dismiss is DENIED;

2.  Oneida Indian Nation's motion for summary judgment is GRANTED;

3.  Madison County's cross motion for summary judgment is DENIED;

4. Madison County is permanently enjoined from any attempt to foreclose on Oneida Nation property or in any other way alter title to Oneida Indian Nation property;

5. Madison County is permanently enjoined from assessing and/or collecting penalties and interest on unpaid taxes against the Oneida Indian Nation; and

---

[3] As in the Sherrill case, there is always the possibility of a settlement agreement between the parties.  This would, of course, be the best final result.  However, a settlement would require a spirit of cooperation and compromise on the part of both sides which heretofore has appeared to be sorely lacking.  See 145 F. Supp. 2d at 231.  Otherwise this and other federal and state litigation will continue into the indefinite future.

6. Oneida Indian Nation's reservation was not disestablished.

The Clerk is directed to enter judgment accordingly.


IT IS SO ORDERED.


United States District Judge


Dated:  October 27, 2005
        Utica, New York.